IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| PISC INTERNATIONAL, INC., | } |
| *Plaintiff(s)* | } |
| | } |
| v. | } CIVIL ACTION NO. H-05-0626 |
| | } |
| WOOLSLAYER COMPANIES, INC., | } |
| *Defendant(s)* | } |

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

Pending before the court are Plaintiff Petroleum & Industrial Supply Company's ("PISC") motion for final summary judgment (Doc. 17) and Defendant Woolslayer Company International's ("Woolslayer") response and cross-motion for summary judgment (Doc. 18). PISC asserts six causes of action in its complaint, they are (1) breach of contract; (2) fraudulent inducement; (3) unjust enrichment; (4) breach of fiduciary duty; (5) conversion; and (6) promissory estoppel. PISC agrees that, under the facts of this case, no claim for conversion exists under Texas law. *See* PISC's Response at 26 (Doc. 22). This leaves five contested issues. For the following reasons, the court ORDERS that PISC's motion for summary judgment is denied in its totality. Woolslayer's motion for summary judgment is granted on PISC's breach of fiduciary duty and promissory estoppel claims. Woolslayer's motion for summary judgment is denied, however, on PISC's claims for breach of contract, fraud and unjust enrichment.

I. Background

This case is set against the peculiar background of the Middle Eastern oil business. Local laws in the United Arab Emirates prevent foreign companies from directly soliciting business from UAE's national oil company, the National Drilling Company ("NDC"). Because of these laws, local companies have been formed to represent foreign companies seeking to do business with NDC. PISC is the American counterpart of one such local company, Emdad LLC.

In October 2003, PISC learned that NDC required an oil derrick for a rig project. One of the approved manufacturers listed by NDC was Defendant Woolslayer. Woolslayer is a manufacturer of oil related equipment based in Oklahoma.

Between October 24, 2003, and October 31, 2003, PISC and Woolslayer negotiated a deal concerning the NDC project. These negotiations encompassed telephone conversations, at least one personal meeting between the presidents of the two companies, several written proposals, and multiple emails. PISC claims Woolslayer agreed to pay a fifteen percent commission if PISC secured Woolslayer's specification as the derrick manufacturer. Woolslayer, on the other hand, claims that it only agreed to pay a fifteen percent "reseller's commission" if PISC was the actual purchaser of the derrick. Both parties have submitted evidence on this issue; its resolution must await a trial on the merits.

Acting on its agreement with Woolslayer, PISC claims it set out to ensure that NDC would specify Woolslayer as the derrick manufacturer. Besides communicating Woolslayer's proposals to its agent in Abu Dhabi, PISC's efforts included sending the company's president, M.J. Hellial, to the Middle East to meet with Emdad and NDC.

On December 18, 2003, PISC received an email from Emdad informing it that it had succeeded and that Woolslayer had been specified by NDC as the derrick manufacturer. *See* Email from Jamal Bochor to M.J. Hellial (Doc. 22, Appx. 11). The email explains that the order will be coming from Keppel FELS, the general contractor on the project, or Varco International ("Varco"), the rig builder.

PISC alleges it contacted Woolslayer approximately four times during the next couple of months to ensure that everything was working well with Varco. PISC claims that John Woolslayer, then president of Woolslayer, assured it that everything was being taken care of. M.J. Depo. 173-174 (Doc. 22, Appx. 1).

Varco eventually purchased a derrick from Woolslayer on February 27, 2004, for $1,571,252. PISC has demanded its commission, and Woolslayer has refused to pay.

II. Summary Judgment Standard

The movant seeking a federal summary judgment initially must inform the court of the basis for his motion and point out those portions of the pleadings, depositions, answers to interrogatories, and admissions on file that demonstrate the absence of a genuine issue of material fact and show that he is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant need not negate the opposing party's claims nor produce evidence showing an absence of a genuine factual issue, but may rely on the absence of evidence to support essential elements of opposing party's claims. *International Assoc. of Machinists & Aerospace Workers, Lodge No. 2504 v. Intercontinental Mfg. Co.*, 812 F.2d 219, 222 (5th Cir. 1987). The burden then shifts to the non-movant to set forth specific facts and competent summary judgment evidence to raise a genuine issue of material fact on each essential element of any claim on which he bears the burden of proof at trial. Fed. R. Civ. P. 56(c). The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-moving party may not rest on mere allegations or denials in its pleadings, but must produce affirmative evidence and specific facts. *Anderson*, 477 U.S. at 256-57. He meets this burden only if he shows that "a reasonable jury could return a verdict for the non-moving party." *Id.* at 254. A mere scintilla of evidence will not preclude granting of a motion for summary judgment. *Id.* at 252.

All reasonable inferences must be drawn in favor of the non-moving party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574. 587-88 (1986), citing *United States v. Diebold*, 369 U.S. 654, 655 (1962). Once the burden of proof has shifted to the non-movant, he "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. Instead he must produce evidence upon which a jury could reasonably base a verdict in his favor. *Anderson*, 477 U.S. at 249. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be

granted." *Id.*, 477 U.S. at 249-50.  Moreover the non-movant must "go beyond the pleadings and by her own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial."  *Webb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir. 1998).  Unsubstantiated and subjective beliefs and conclusory allegations and opinions are not competent summary judgment evidence.  *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139-40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825 (1992).  Nor are pleadings summary judgment evidence.  *Wallace v. Texas Tech University*, 80 F.3d 1042, 1046 (5th Cir. 1996), *citing Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(*en banc*). The non-movant cannot discharge his burden by offering vague allegations and legal conclusions. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 889 (1990).  Nor is the district court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment.  *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998), *citing Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992).

III. Application of law to the facts.

The parties have, through their summary judgment evidence, demonstrated that there are material issues for trial.  These issues include: (1) whether Woolslayer agreed to pay PISC a fifteen percent commission if it secured Woolslayer's specification as the derrick manufacturer; (2) whether PISC in fact secured Woolslayer's specification as the derrick manufacturer and thereby procured the sale to Varco; and (3) whether Woolslayer agreed to pay the commission intending never to do so.

A. Breach of Contract

The parties have widely divergent views on the nature of the agreement they reached.  Both parties have submitted evidence supporting their views.  This evidence includes the deposition testimony of John Woolslayer, M.J. Hellial, and Johnny Champagne.  This testimony,

concerning conversations between the parties, is unclear and on some points contradictory. Importantly, Hellial claims the parties agreed that Woolslayer would pay PISC a commission if it procured NDC's specification of Woolslayer as the approved vendor on the project. Hellial Depo:74:12-25, 85:24-86:13. John Woolslayer, on the other hand, claims Woolslayer agreed to pay a commission only if PISC ordered the specific derrick described in the proposal. Woolslayer Depo: 30:16-17, 31:20-32:5. This evidence, viewed in the light most favorable to the non-movant, precludes the court from granting either parties' motion for summary judgment.

Woolslayer claims that its December 12, 2003, cover letter and proposal constitute an offer PISC failed to accept. This claim is based on a provision in the proposal calling for acceptance within thirty days. Woolslayer's argument is unconvincing because PISC has submitted evidence that the parties had already reached an agreement and that the cover letter was issued to memorialize Woolslayer's obligation. *See* email exchange between John Woolslayer and M.J. Hellial (Doc. 22, Appx. 6).

Woolslayer argues that PISC failed to perform under the contract because the derrick sold to Varco was not the same derrick described in the December 12, 2003, proposal. This argument ignores PISC's claim: that its job was to procure NDC's designation of Woolslayer as the specified manufacture on the project. Additionally, M.J. Hellial testified that the parties contemplated changes being made to the specifications. *See* Hellial Depo: 97:21-98:7, 99:10-18.

Woolslayer's final argument is that PISC has submitted no evidence it did anything to bring about the sale to Varco. After reviewing the record, the court finds that PISC has submitted evidence that would allow a reasonable jury to conclude it did. This evidence includes M.J. Hellial's testimony that PISC actively lobbied on Woolslayer's behalf and that he traveled to the Middle East to participate in the process. *See* Hellial Depo. 95:5-96:25, 101:3-102:13.

B. <u>Fraud & Unjust Enrichment</u>

Because the court has determined that Plaintiff's breach of contract claim should proceed to trial, it will reserve judgment on Plaintiff's fraud and unjust enrichment claims. Both of these claims will turn on whether Plaintiff can introduce evidence showing that Woolslayer

entered into its agreement with PISC with the intent never to perform. *See IKON Office Solutions, Inc. v. Eifert*, 125 S.W.3d 113, 124 (Tex. App. 2003) (Fraud); *Heldenfels Bros., Inc. v. Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992) (unjust enrichment). In this vein, PISC has introduced evidence that Woolslayer was in contact with Varco before it was selected by NDC as the derrick manufacturer and used the proposal it prepared for PISC as the basis for the quote it prepared for Varco.

### C. Breach of Fiduciary Duty and Promissory Estoppel

PISC's claim for breach of fiduciary duty fails as a matter of law. Plaintiffs asserting claims for breach of fiduciary duty must establish the existence of a fiduciary relationship. *Myers v. Cuevas*, 119 S.W.3d 830, 836 (Tex. App. – San Antonio 2003, no pet.). The law recognizes two categories of fiduciary relationships: formal fiduciary relationships, which exist as a matter of law; and informal fiduciary relationships, which arise by virtue of a special confidential relationship between the parties. *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 177 (Tex. 1997). To impose an informal fiduciary relationship in a business transaction "the relationship must exist prior to, and apart from, the agreement made the basis of the suit." *Id.* In this case, the evidence reflects that the parties had almost no dealings before the transaction in question. Therefore dismissal of Plaintiff's claim is appropriate.

Likewise, Plaintiff's promissory estoppel claim must be dismissed. Promissory estoppel is not an independent claim for relief, but rather a defensive theory invoked when a contract is found unenforceable through the application of some formal rule. *Trammel Crow Co. No. 60 v. Harkinson*, 944 S.W.2d 631, 636 (Tex. 1997). This is not the case here.

### IV. Conclusion

For the aforementioned reasons, the court ORDERS that PISC's motion for summary judgment (Doc. 17) is DENIED. Defendant Woolslayer's cross-motion for summary judgement (Doc. 18) is GRANTED-in-part and DENIED-in-part. Specifically, Woolslayer's motion for summary judgement is granted on PISC's claims for conversion, promissory estoppel, and breach of fiduciary duty. Woolslayer's motion for summary judgment is denied on PISC's

-7-

claims for breach of contract, fraud, and unjust enrichment.

        **SIGHED** at Houston, Texas, this 17th day of November, 2006.

                                                                                        _____
                                                                                         MELINDA HARMON
                                                                                 UNITED STATES DISTRICT JUDGE